# COURT OF APPEALS OF VIRGINIA

### Record No. 1834-25-3

JOSEPH LEON FARMER, JR.

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White

Argued at Lexington, Virginia

Opinion Issued July 21, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Matthew L. Pack (M. Pack Law, PLLC, on brief), for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE KIMBERLEY SLAYTON WHITE

Joseph Leon Farmer, Jr. was pulled over for speeding. After a K-9 scan around his vehicle, the canine alerted officers to the presence of controlled substances. Upon subsequent search of the vehicle, officers found pills and a firearm. Farmer was eventually charged and convicted of possession of fentanyl; possession with intent to distribute oxycodone; possession of a firearm while possessing with intent to distribute a Schedule I/II controlled substance; possession of a firearm on or about his person while possessing with intent to distribute a Schedule I/II controlled substance; driving without a license; carrying a concealed weapon;

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

purchasing a firearm without a background check; and possessing a firearm after having been convicted of a non-violent felony. He timely appealed these convictions.

In this appeal, he makes five assignments of error that we organize into three sections. First, assignments of error one through three challenge the sufficiency of the evidence for possession of oxycodone, fentanyl, and a firearm. Second, assignment of error four asserts abuse of discretion for admission of evidence gained from what Farmer characterizes as a "prolonged" traffic stop. Finally, assignment of error five challenges the use of a predicate non-violent felony conviction as the basis of a felon in possession of a firearm conviction. As we discuss below, Rule 5A:20 and the approbate and reprobate doctrine prevent us from addressing a number of his assignments of error. As to the rest, we find no error and affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (quoting *Gerald*, 295 Va. at 473).

I. Traffic Stop

On May 21, 2022, Detective Joshua Massie noticed Farmer driving down a residential street at what appeared to be a faster speed than the 25 mile per hour speed limit. Massie followed and paced Farmer's vehicle and determined he was traveling at approximately 46 miles per hour. Massie initiated a traffic stop, and after Farmer pulled into a parking lot, Massie approached the vehicle and spoke to Farmer. When asked for identification, Farmer lifted a brown Louis Vuitton bag, set it back down, and stated that he had no identification with him. He

- 2 -

did, however, give Massie the vehicle's registration and his date of birth. Farmer denied having drugs or guns in the vehicle.

Massie contacted dispatch to determine if Farmer had a revoked or suspended license and to check for active arrest warrants. Massie confirmed with dispatch that Farmer did not have a license and then used his in-car computer to find information about Farmer and his vehicle. He also used his department issued cell phone to access the traffic court schedule to find a return court date for the summons.

While Massie began typing the speeding offense summons, another officer told Farmer to exit the vehicle so that a K-9 scan could be performed by Officer Javaz Williams and his canine partner, Kairos, around the exterior of the vehicle. The scan resulted in a positive alert.

Upon this alert, Massie stopped writing the summons and began conducting a search of the vehicle, believing he had probable cause to support the search. Inside the Louis Vuitton bag, he found an acetaminophen bottle containing 41 blue pills, an amber bottle containing 52 white pills, a white bottle containing 10 gray pills, and two debit cards, one in Farmer's name and one in the name of Aniyah Carraway. At the prompting of Officer Harris, who was searching the passenger side of the vehicle, Massie also found a Glock 17 Gen5 nine-millimeter pistol with bullets in the magazine on the driver's side floor near the emergency brake. Massie found an iPhone on the driver's side floor as well. Finally, he found a flip phone and $2,808 of cash in hundreds, fifties, twenties, and tens in Farmer's pocket.

After the search, Massie arrested Farmer and informed him of his *Miranda*[2] rights. After taking Farmer to the Lynchburg Police Station, Massie interviewed him further. Farmer initially said he was not working, but when pressed by Massie about the "banded up" cash, Farmer said that he sells clothes on Instagram through his limited liability company. Massie later determined

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

that no such LLC exists and told Farmer that he would seek a search warrant for the contents of Farmer's phone to see the Instagram account. Massie also asked Farmer about the gun in the vehicle, and Farmer said, "[t]hat's just for protection" and stated he bought it without a background check from a person whose name he could not recall. When asked about the "oxys," Farmer said, "I take pills." Massie asked, "you had ten milligrams, twenty milligrams, and thirty milligrams that you just take on your own?" Farmer responded, "Yeah, I take 'em all day." When asked who prescribed the pills, Farmer ended the interview, saying "we can have this in court."

While in jail, Farmer made five phone calls to Aniyah Carraway, the mother of his child. Massie listened to the calls. During these calls, Farmer mentioned pills in separate jars and the gun in his vehicle. He told Carraway to delete his Facebook and Instagram accounts, erase his Apple iCloud account, remove any association between that account and his phone numbers, and delete saved videos in his Snapchat account. He later asked her to confirm that she had completed these tasks. He also asked her to contact the cell phone companies and get new numbers assigned to his cell phones. Further, he "indicated that he had too many clothes down at some location," specifically blue and white hoodies, and "ask[ed] if Carraway could take his clothes to her dad's." According to Massie, he asked her, "[D]o you understand what I'm talking about, like do you get what I'm saying[?]"

II. Evidence

Detective Massie sent the pills collected from the vehicle to the Virginia Department of Forensic Science (DFS) for analysis. A DFS forensic scientist tested one pill from each container taken from the Louis Vuitton bag—a blue pill from the acetaminophen bottle was found to contain fentanyl, a white pill from an amber bottle was found to contain oxycodone and acetaminophen, and a gray pill from a white bottle was found to contain oxycodone. The white

and gray pills had markings consistent with their contents, but the blue pill's contents "were inconsistent with dosage unit labeling" since it had "physical characteristics, including shape, color and manufacturer's markings" that were "consistent with a Schedule II pharmaceutical preparation containing Oxycodone."

Search warrants were obtained for both cell phones found in Farmer's vehicle.[3] After searching the cell phones, investigators found pictures of a Glock 17 with the same serial number as the one found in the vehicle.

III. Trial

Farmer was charged and convicted in a jury trial of possession of fentanyl; possession with intent to distribute oxycodone; possession of a firearm while possessing with intent to distribute a Schedule I/II controlled substance; possession of a firearm on or about his person while possessing with intent to distribute a Schedule I/II controlled substance; driving without a license; carrying a concealed weapon; and purchasing a firearm without a background check.

At trial, Detective Massie testified that in his eight years of working in the vice and narcotics unit of the Lynchburg Police Department he had been involved in approximately 300 drug possession cases and 100 drug distribution cases. He explained that Farmer's possession of multiple types and strengths of drugs was significant as "distributors of narcotics . . . will have the narcotics packaged separately, not all together in one bag." He also stated that, "it's attempting to deceive law enforcement" when prescription medication is "located in separate jars that are unmarked with different weights of prescription." Thus, he "found [it] of note" that in "this instance . . . there was 10 milligram oxy in one bottle, 20 milligram oxy in another bottle, and 30 milligrams in another bottle."

---

[3] Detective Massie also obtained a search warrant for Farmer's Facebook and Instagram accounts, but received no information from those.

Although Massie said Farmer's arrest was the first time he had seen a fentanyl pill with characteristics of a blue oxycodone pill, he estimated that 95% of the fentanyl pills he encountered since that time were the "pressed pills just like the blue pills . . . with the M on one side and the 30 on the other" that they found in the Louis Vuitton bag. He also noted that fentanyl users often refer to fentanyl pills as "blues" and "describe them as a piece of clothing to evade law enforcement." At the time, these pills could be sold for $10 to $20 each.

He testified that $2,800 in cash found on Farmer's person was significant, especially as it included 29 $20 bills and 26 $50 bills—the most common denominations used to purchase drugs. He believed that the gun found in the vehicle also was significant, since drug dealers commonly carry guns for protection. Finally, just as Farmer had two cell phones, Massie testified that drug dealers usually carry multiple cell phones—a phone for "normal conversation" and a "throw phone" for drug distribution.

Farmer filed a motion to suppress the drugs and the gun found in the search of his vehicle as well as the statements he made upon his arrest because "the officer did not have probable cause to seize the Defendant and prolong the length of the routine traffic stop beyond the time necessary to issue a summons for driving without a license." The Commonwealth countered that the dog sniff of Farmer's vehicle generated a positive alert "[b]efore Officer Massie could complete the process of writing Mr. Farmer a summons for speeding." After a hearing, the court issued an order denying the motion. There is no transcript of the hearing on the record. Farmer filed a second motion to suppress on the same grounds and the trial court denied that motion, noting that it had "[p]reviously ruled on this issue" in response to his first motion to suppress.

At the close of the Commonwealth's evidence, Farmer declined to present any evidence and moved to strike the evidence—only for the charges relating to possession of fentanyl and

possession of the firearm.[4]  He argued that the Commonwealth failed to present evidence

sufficient to prove knowledge of the nature and character of the fentanyl, which is a necessary

element of the possession, since no one knew any of the pills contained fentanyl.  Farmer's

counsel claims he in fact said the pills were oxycodone.[5]  He also challenged two firearm

offenses in the motion to strike—"possession with intent to distribute and . . . possession on or

about his person"—arguing that you cannot be convicted of two charges involving possession of

a firearm when there was only one firearm.  The trial court denied the motion, saying "viewing

the evidence in the light most favorable to the Commonwealth . . . I do think the Commonwealth

has made a prima facie case for each of the charged offenses."  During closing arguments,

Farmer's counsel also admitted that Farmer had been recorded as "saying he got this firearm

from somebody else" and "he said he carried it for his protection."  "Yes, he possessed a

firearm," he explained, "[b]ut here is the problem, he possessed a firearm that . . . was not on or

about his person" and "he never possessed with the intent to distribute."  Farmer was convicted

of possession of fentanyl; possession with intent to distribute oxycodone; possession of a firearm

while possessing with intent to distribute a Schedule I/II controlled substance; possession of a

firearm on or about his person while possessing with intent to distribute a Schedule I/II

controlled substance; driving without a license; carrying a concealed weapon; and purchasing a

firearm without a background check.

In a separate bench trial, Farmer was charged and convicted of possessing a firearm after

having been convicted of a non-violent felony.  The trial court incorporated evidence from the

---

[4] Alternatively, Farmer suggested the gun possession charges should be merged.

[5] According to Farmer's counsel, this admission implicates him on the oxycodone charge.
"In fact, he said it was oxycodone. So that's why I would say that definitely Count No. 2
[possession with intent to distribute oxycodone] goes forward."  Farmer's counsel admitted
likewise in other places as well.

jury trial and admitted an additional exhibit, the prior conviction order. Farmer stated that he had "no objection" to inclusion of the prior conviction order.

Farmer timely appealed the decisions of the trial court.

ANALYSIS

I. Sufficiency of Evidence: Possession of Controlled Substances and Firearm[6]

Farmer contends that the Commonwealth lacked sufficient evidence to prove beyond a reasonable doubt his possession of a firearm and controlled substances, which are necessary elements for some of his crimes. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

"We have previously made clear that '[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other

---

[6] Farmer does not argue against the Commonwealth's success in proving intent to distribute. Rather, his brief is confined to arguments against proof of possession of the firearms and the controlled substances.

or mutually contradictory.'" *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009) (alteration in original) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)).

While Farmer certainly made statements to law enforcement related to his possession of both the oxycodone and the firearm, the admissions he made at trial control the day here. "The 'approbate and reprobate' doctrine applies when the error the defendant complains of on appeal is 'obviously the result of his own strategy and actions at trial.'" *Commonwealth v. Holman*, 303 Va. 62, 72 (2024) (quoting *Rowe*, 277 Va. at 502). Applying equally to assertions of fact and law, the doctrine "prevents litigants from 'playing fast and loose' with the courts." *Wilroy v. Halbleib*, 214 Va. 442, 445 (1974) (quoting *Rohanna v. Vazzana*, 196 Va. 549, 553 (1954)).

Farmer's counsel made the following admissions at trial. "There is evidence that we have a drug addict that was carrying drugs." "In fact, he said it was oxycodone. So that's why I would say that definitely [the count for possession with the intent to distribute oxycodone] goes forward." "With the possession with intent to distribute on the oxycodone, we would argue that we believe that there is facts sufficient for possession in that." "Now, the oxycodone, I think that's pretty clear. Right? I think everybody is pretty clear here that the defendant thought that he had oxycodone." "So now I'm going to move to the possession with intent to distribute the oxycodone. All right. So let's back up for a second. The oxycodone he has admitted to." "As far as the oxycodone possession, it's possession all day long, so he's guilty of possession."

Farmer's counsel made the following admissions about the firearm at trial. "The obtain a firearm without a background check, we never heard other than the defendant saying he got this firearm from somebody else, that there was a background check not completed." "Yes, he possessed a firearm. But here is the problem, he possessed a firearm that Officer Harris testified was not on or about his person. And he possessed a firearm and he never possessed with the intent to distribute."

On appeal, Farmer wishes to deny the very thing he admitted at trial—that he possessed the firearm and the controlled substances. He is precluded from doing so by the approbate and reprobate doctrine. Thus, his admissions of possession are enough for conviction here. [7]

## II. Admission of Evidence

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

---

[7] Farmer made an argument at trial that he had no knowledge of the fentanyl because it was packaged in an acetaminophen bottle and the pills had physical characteristics typical of oxycodone. However, Farmer does not develop this argument on brief. The generic nature of the packaging is mentioned only once in the "Background" section of the brief and twice in the "Argument" section describing the possession of the controlled substances generally. Fentanyl is mentioned only in tandem with the oxycodone within the argument that the Commonwealth generally failed to prove knowing possession because it lacked sufficient evidence that Farmer "possessed, handled, or exercised control over them." Thus, we are precluded from addressing this argument. Rule 5A:20(e).

Farmer also made the argument at trial that the firearm was not "on or about his person," even if Farmer otherwise possessed it. However, for the same reasons, we cannot address that argument here. The conviction for the possession of a firearm on or about his person while possessing with intent to distribute a Schedule I/II controlled substance is mentioned only once on brief in the "Background" section listing Farmer's convictions. He develops no further argument that the Commonwealth failed to prove his possession of the firearm "on or about his person."

- 10 -

"[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the United States Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). Thus, a seizure based on a traffic stop alone "'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350-51 (alterations in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

Farmer claims that "[w]hile Detective Massie was in the process of writing the summons, another officer conducted a K-9 scan of the vehicle." However, he also claims that "[t]he Commonwealth presented no evidence establishing that the K-9 sniff occurred contemporaneously with the citation process or that it did not measurably extend the duration of the stop." To the contrary, the Commonwealth submitted a video to the record without objection from Farmer that showed contemporaneous activity from multiple cameras throughout the process. The video shows the K-9 scan occurring as Massie completes the summons.

Farmer claims the mission of the traffic stop was "nearing completion" as Massie was writing the summons. However, he also admitted that "[w]hile Detective Massie was in the process of writing the summons, another officer conducted a K-9 scan of the vehicle." Additionally, he admits, "Detective Massie testified that he stopped writing the summons only after being informed that the K-9 had allegedly given a positive alert, at which point he shifted from traffic enforcement to a narcotics investigation and conducted a search of the vehicle."

"[T]he Supreme Court made clear . . . that a police officer 'may conduct certain unrelated checks during an otherwise lawful traffic stop,' but 'may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.'" *Matthews v. Commonwealth*, 65 Va. App. 334, 344 (2015) (quoting *Rodriguez*, 575 U.S. at 355).

Farmer begins his argument with a burden of proof claim against the Commonwealth, saying that it "presented no evidence establishing that the K-9 sniff occurred contemporaneously with the citation process or that it did not measurably extend the duration of the stop." Yet, he admits the very thing when he says Massie was in the process of writing the summons while the K-9 scan occurred and did not stop until he was notified of a positive alert from the canine.

Further, the stop took a total of just over four and a half minutes from the time Farmer's and Massie's vehicles were stopped to the time Massie was notified of the K-9 alert that supplied probable cause for the search. Massie was not involved in the K-9 scan. Farmer never objected on brief that Massie took too long in writing the summons. He also did not point to anything Massie did that would have extended the traffic stop beyond the time it took for him to complete the summons. The body-cam footage and Massie's testimony indicate that Massie did not stop the process of writing the summons until he was notified of the K-9 alert. The K-9 alert gives Massie probable cause to shift the stop to an investigation of the vehicle. In short, Farmer undermines his own argument and makes claims contrary to the record. His argument has no merit.

III. Felon-in-Possession Charge—No Final Order

Farmer argues that it was error to find him guilty of possession of a firearm by one convicted of a non-violent felony because he asserts that the predicate conviction order was an invalid nunc pro tunc order. The best and narrowest ruling is that Farmer has waived his appeal on this issue.[8]

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause

---

[8] "As we have often said, 'the doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).

shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).

Farmer neither objected to introduction of the prior conviction order, nor to its use as a predicate conviction order for his conviction in this case. In fact, Farmer affirmatively stated, "no objection, your honor . . . no objection" in response to the Commonwealth's motion to introduce the predicate conviction order.

Farmer concedes that he did not object to the use of the predicate conviction order at trial. He categorizes his procedural problem as the failure to make a contemporaneous objection as required by our Rules. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Farmer argues that this Court ought to find abuse of discretion based on the ends of justice exception. "The ends of justice exception is narrow and is to be used sparingly." *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* at 221.

However, Farmer mischaracterizes his procedural problem. Not only did he not impose an objection to the use of the prior conviction order, he affirmatively agreed to the admission of it. Again, the approbate and reprobate doctrine dooms Farmer's ends of justice argument. While the ends of justice exception can be an exception to the contemporaneous objection rule found in Rule 5A:18, Farmer's "arguments are, instead barred by the approbate and reprobate doctrine,

- 13 -

and there is no 'ends of justice' exception to the approbate and reprobate doctrine." *Nelson v. Commonwealth*, 71 Va. App. 397, 405 (2020).

Farmer's argument is without merit.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in all respects.

*Affirmed.*